**CITY OF YORK, Appellant**

v.

**WHITE ROSE LODGE NO. 15, FRATERNAL ORDER OF POLICE.**

Commonwealth Court of Pennsylvania.

Argued Sept. 5, 2007.

Decided Nov. 16, 2007.

Scott E. Blissman, Philadelphia, for appellant.

Sean T. Welby, Harrisburg, for appellee.

BEFORE: COLINS, Judge, and SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge COLINS.

This is an appeal by the City of York (City) from the order of Judge Michael J. Brillhart of the Court of Common Pleas of York County (trial court), denying the Petition to Vacate the arbitration award of John M. Skonier (Arbitrator Skonier) and affirming the award.

White Rose Lodge No. 15, Fraternal Order of Police (Union) represents all full-time police officers employed by the City. On July 10, 2003, while off duty, City Police Officer Michael Scott Hose (Hose) was involved in a two-car accident in York County, and taken to York Hospital for treatment. Because the investigating officer at the scene of the accident smelled alcohol, Hose's blood was tested while at the hospital. Hose's blood alcohol level tested above the legal limit and criminal charges were filed against him, including a charge of driving under the influence. Hose applied for, and was accepted into the Accelerated Rehabilitative Disposition program in York County. His injuries required extensive medical treatment, including surgeries.

In December, 2003, Hose was informed that the City, which self-insures its medical benefits, was rejecting all medical bills incurred as a result of his injuries, on the basis that an exclusion to benefits contained in the Self–Funded Employee Benefit Plan document (plan document) applied. In 1986, the relevant exclusion language included in the plan document permitted the City to deny coverage when the expense at issue occurred as a result of a **participation in the commission of a felony.** In 1999, the most recent restatement of the plan document occurred; this plan document provides that the City may deny coverage for any illness or condition caused by or contributed to "**by engaging in an illegal act or occupation; by committing or attempting to commit any crime, criminal act, assault or other felonious behavior;** or by participating in a riot or public disturbance." (Exhibit J–2, Plan Document and Summary Plan Description, Self–Funded Employee Benefit Plan, restated January 1, 1999) (emphasis added.)

Hose appealed to the City, and the City denied coverage for payment of expenses from the incident because the injuries were the product of Hose engaging in a criminal and/or unlawful act, i.e., operating a motor vehicle while having a .177 blood alcohol content. The Union then filed a grievance, and the parties processed this grievance to arbitration. After denying the City's challenges to arbitrability, Arbitrator Skonier concluded that the 1986 plan document was substantively changed in the 1999 restatement, resulting in a significant broadening beyond the original "participation in the commission of a felony," and stated that this change must be rescinded because it was never bargained for, and diminishes the benefit that existed. Arbitrator Skonier determined that because Hose did not commit a felony, any denial of benefits was inappropriate, and

he directed the City to pay Hose's medical claims. The City filed a Petition to Vacate the arbitration award, and on September 12, 2006, the trial court denied the City's Petition. This appeal followed.

On appeal, the City first argues that the selection of Arbitrator Skonier violated its constitutional right to due process and constituted an irregularity of the proceedings. The parties' collective bargaining agreement provides for the arbitration of grievances by an arbitrator selected by the American Arbitration Association (AAA). The actions taken by AAA's Case Manager, Benjamin D. Tang (case manager) in the selection of Arbitrator Skonier are summarized in his affidavit.[1] Initially, the parties were sent a list of fifteen potential arbitrators. In a letter to the parties, the case manager indicated that if the parties could not agree on the selection of an arbitrator from the first list, AAA would submit a second list, consisting of five names of potential arbitrators, whom the parties would have to rank numerically or object to for cause only. The parties did not agree on appointment of an arbitrator from the initial list. In his affidavit, the case manager states:

> 12. Where the parties cannot come to agreement on the appointment of an arbitrator, Labor Rule 12 allows the administrator to make an appointment of an arbitrator from other members of the Panel of Labor Arbitrators without requiring the administrator to submit any additional list to the parties. (Joint Exhibit # 4, p. 3.)

However, the case manager did issue a second list, consisting of five names, with instructions to rank the arbitrators in order of preference; the parties were directed to strike names based on factual objection only, which had to be submitted in writing with an explanation of the conflict of interest for any names stricken. The correspondence further provides that absent this explanation of the alleged conflict of interest, stricken names would be deemed acceptable to a party, and states "[W]e will try to appoint a mutually acceptable arbitrator who can hear your case promptly." (Exhibit E, List for Selection of Arbitrator, February 18, 2004.) The City returned the list with all five names ranked. The Union returned the list with two names ranked, and three names stricken, but no written explanation. The City's first choice was Steven M. Wolf; Arbitrator Skonier was listed as the City's fourth choice. The Union's first choice was Arbitrator Skonier, and the three names stricken were the City's top three ranked arbitrators. The case manager then notified the parties of the selection of Arbitrator Skonier. The City objected to his appointment, and advised the case manager by letter that since the Union had failed to provide a written explanation with regard to the names stricken from its list, those arbitrators must be deemed acceptable and ranked as third on the Union's list, with the effect of the appointment of the Union's first choice for arbitrator, Steven M. Wolf, instead of Arbitrator Skonier.

The case manager then requested that the Union provide a written explanation of the conflicts of interest upon which it based its decision to strike three names from the list of five. Instead, the Union orally provided rankings for all five names on the list. Finally, the case manager considered both the Union and the City's full rankings, determined that there was a tie between Arbitrator Skonier and Steven

---

1. Joint Exhibit # 4, Affidavit of Benjamin D. Tang, Case Manager, American Arbitration Association, June 24, 2004.

M. Wolf, and broke the tie alphabetically, resulting in the appointment of Arbitrator Skonier.

■ Arbitrator Skonier denied the City's challenge to arbitrability, noting that pursuant to AAA's Labor Rule 12, after the parties rejected the arbitrators submitted on the initial list, AAA could have appointed an arbitrator to hear the grievance from its panel of arbitrators. Arbitrator Skonier concluded that AAA's determination to proceed as it did was within its province under its authority to interpret and apply its own rules, specifically citing Rules 17 and 45.[2] In his opinion, the trial judge found significant the fact that while the City objected to the initial appointment made, it did not do the same with respect to the second appointment which resulted in the same arbitrator being selected. The trial judge noted that according to its rules, AAA was permitted to make the appointment of any names on its panel if the procedure followed with the initial list was unsuccessful. The trial judge determined that Arbitrator Skonier interpreted the actions of AAA to be in accordance with its rules, and AAA's ruling on the procedural aspect to be conclusive, and concluded that the selection of the arbitrator in this case did not violate the City's constitutional right to due process or constitute an irregularity of the proceedings. We agree.

The City next argues that Arbitrator Skonier exceeded his authority and jurisdiction by interpreting the plan document, which clearly vests in the City, as plan administrator, the managerial, non-arbitrable prerogative to render decisions regarding health insurance coverage, including eligibility for benefits. Article XII of the parties' collective bargaining agreement states:

> Effective 1/1/99, the City shall provide life, medical, surgical, dental and hospitalization benefits for each police officer without cost to the police officer as indicated below....The schedule of benefits shown here is merely a summary and all benefits are further defined, including certain exclusions and limitations, in the plan document or insurance contract in force on the date of the claim.

(Joint Exhibit 13, Collective Bargaining Agreement.)

■ The Union avers that the City's contention ignores the plain language of the collective bargaining agreement, which defines a grievance subject to arbitration as broadly as possible. Article V of the collective bargaining agreement states:

> GRIEVANCES. The purpose of this section is to provide an orderly method for the settlement of a dispute between the parties under the interpretation, application, or claimed violations of Department rules and regulations, State laws, City ordinances, and all clauses of this Agreement.

The Union argues that the parties' collective bargaining agreement specifically provides that medical insurance benefits shall

---

2. AAA's Rule 17 provides, in relevant part:
   Upon objection of a party to the continued service of a neutral arbitrator, the AAA, after consultation with the parties and the arbitrator, shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.
   AAA's Rule 46 provides:
   The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of any such rule, it shall be decided by a majority vote. If that is unobtainable, the arbitrator or either party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.
   (Joint Exhibit 6, AAA Labor Arbitration Rules, amended and effective May 1, 2004.),

be provided in accordance with the "plan document ... in effect at the time of the claim;" whether or not these benefits were provided in accordance with the plan document in effect at the time of the claim is a dispute that the parties agreed would be submitted to arbitration pursuant to the collective bargaining agreement. Accordingly, the Union contends, the trial court properly held that Arbitrator Skonier had both jurisdiction and authority, freely granted by the parties to determine the issue. We find that the matter *sub judice* clearly involves a claimed violation of Article XII of the collective bargaining agreement, and as such, is arbitrable.

Finally, the City avers that Arbitrator Skonier committed reversible error by improperly reforming the labor agreement, and his decision to direct the City to rescind the 1999 plan document in favor of the 1986 document constituted an excess of his authority. Arbitrator Skonier stated that the record presented at the arbitration hearing revealed that the Union never negotiated the content of the plan document; the Union offered testimony that the City had assured the Union that the same benefits would be maintained in the restated plan document, and in the event the City sought to apply the plan document in a manner inconsistent with the existing terms of health coverage, the Union would simply file a grievance. The City acknowledged that the instant matter was the first time the City sought to apply the exclusion in the 1999 plan document. Arbitrator Skonier concluded that the 1986 plan document was "in force on the date of the claim" because later restatements were unilateral actions by the City not bargained for with the Union.

■ This Court described the narrow standard of review of a grievance arbitration award as set forth by our Supreme Court most recently in *Department of Corrections v. Pennsylvania State Corrections*

*Officers Association,* 923 A.2d 1212 (Pa. Cmwlth.2007):

> The Pennsylvania Supreme Court has held that a reviewing court must accord great deference to the award of an arbitrator chosen by the parties. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 149, 743 A.2d 405, 413 (1999). Thus, in the vast majority of cases, the decision of the arbitrator is final and binding upon the parties. *Id.* at 149–150, 743 A.2d at 413.

The trial court correctly stated that the fact that the City may disagree with Arbitrator Skonier's interpretation of the collective bargaining agreement will not warrant reversal; and the court may not question the reasonableness of an arbitrator's interpretation.

Accordingly, the order of the trial court is AFFIRMED.

### ORDER

AND NOW, this 16th day of November 2007, the order of the Court of Common Pleas of York County is affirmed.